**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**WESTERN DIVISION**

ISAAC ARANA-SANCHEZ,

Petitioner,

v.

MARKWAYNE MULLIN, et al.,

Respondents.

No. 5:26-cv-05024-AYP

**ORDER GRANTING PETITION AND ISSUING WRIT FOR HABEAS CORPUS**

## I. SUMMARY

Petitioner Isaac Arana-Sanchez ("Petitioner") filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 (Dkt. No.1) (the "Petition"). Petitioner is currently detained by Immigration and Customs Enforcement ("ICE") at the Adelanto ICE Processing Center in Adelanto, California.

Having reviewed the record, and consistent with several recent decisions by this Court and in this District, the Court concludes that Petitioner's detention on June 28, 2026, violates due process. Accordingly, the Court ORDERS that the Petition be granted, and a writ of habeas corpus be issued requiring Petitioner's immediate release and prohibiting future re detention absent adequate pre deprivation notice and an

individualized hearing.

## II. FACTS AND PROCEDURAL HISTORY

Petitioner is a native of Mexico. (Dkt. No. 1 ¶1.) He entered the United States without inspection in or around 2009. (Dkt. No. 1 ¶25.) Since that time, Petitioner has worked in landscaping and gardening and lives with his partner and two children. (Dkt. No. 1 ¶24.) He is the main breadwinner. (Dkt. No. 1 ¶¶23-24.) Petitioner has no criminal convictions or arrests. (Dkt. No. 1 ¶25.)

Seventeen (17) years after his entry, on June 28, 2026, Petitioner was arrested by immigration officials during a vehicle stop in Los Angeles. (Dkt. No. 1 ¶26.) He was detained on his way to work. (Dkt. No. 1 ¶27.) Petitioner states that his vehicle was suddenly surrounded by more than four (4) vehicles containing immigration agents. *Id.* The ICE agents did not identify themselves. (Dkt. No. 1 ¶28.) Petitioner was forced to the ground, was put on his back, and kicked in the abdomen multiple times. *Id.* Petitioner's co-worker was repeatedly hit in the face, back and head. *Id.* Petitioner's co-worker sustained a black eye and was bleeding. *Id.* Petitioner believed his ribs were bruised and he had difficulty breathing. *Id.* Petitioner was handcuffed and arrested on June 28, 2026. *Id.* Petitioner was taken into immigration custody and remains in custody. (Dkt. No. 1 ¶37.)

On July 12, 2026, Petitioner was issued a Notice to Appear charging him as inadmissible under INA Section 212(a)(6)(A)(i). (Dkt. No. 1 ¶28.)

Respondents assert in their Response that Petitioner appears to be entitled to request and receive an initial bond hearing pursuant to Rodriguez Vazquez v. Bostock, --- F.4th ---, 2026 WL 2196424 (9th Cir. 2026) (Dkt. No. 7.) Respondents argue that Petitioner was properly detained because this is Petitioner's first detention and he was not

previously released from immigration detention or paroled. *Id.*

Respondents filed an Amended Document on September 9, 2026 ("Amended Document") (Dkt. No. 8). In the Amended Document, Respondents provided Petitioner's I-213 which reveals that the Deportation Officers were looking for a Guatemalan national with a criminal record and a final order of removal. (Dkt. No. 8-2 at 3.) Both individuals in the car are described as Mexican nationals in the I-213. (Dkt. No 8-2.) Respondents assert that, in an attempt to flee, the driver reversed and collided with the government vehicle, bringing his vehicle to a complete stop. (Dkt. No. 8-2 at 3.) The driver was extracted from the vehicle and placed in handcuffs. *Id.* Petitioner was a passenger and the I-213 shows that "system queries and statements" made by the Petitioner shows he had no status in the United States. *Id.* Respondents obtained an I-200 arrest warrant and served it to Petitioner on June 28, 2026. *Id.* At approximately 0600 hours, Petitioner was placed under arrest and was detained. *Id.*

Petitioner disputes the timing of the arrest and whether Petitioner was ever served with the warrant. (Dkt. No. 1.) Respondents assert that on June 28, 2026, Petitioner agreed to voluntarily depart. (Dkt. No. 8-3.) June 28, 2026 is the same day Petitioner asserts he was wrongfully stopped while he was driving to work, apprehended, and beaten before being taken into custody. (Dkt. No. 1 ¶¶26-28.) The I-213 does not provide a physical description of the Guatemalan national being sought by the detention officer. (Dkt. No. 8-2 at 3.)

Respondents assert that Petitioner was given a Form I-862, a notice to appear, thus initiating his removal proceedings and providing the basis for his current detention. (Dkt. No. 7 at 2.) Respondents further argue that Petitioner has not requested a custody redetermination hearing

before an Immigration Judge. (Dkt. No. 7 at 3.) Respondents oppose Petitioner's immediate release from custody under 8 U.S.C. § 1226(a). *Id.* Respondents contend that Petitioner has not exhausted his administrative remedies and point to the fact his detention was less than three months at the time the Petition was filed. (Dkt. No. 7 at 4.) Respondents state that Petitioner can also seek a *Rodriguez* bond hearing after 180 days of total detention time, which would be December of 2026. (Dkt. No 7 at 4.) However, if the Court grants bond, then a bond hearing can be provided in seven days. (Dkt. No. 7 at 5.)

On September 29, 2026, the Court ordered supplemental briefing to address the authority submitted in Petitioner's Notice of Supplemental Authority (Dkt. No. 11), the Court specifically asked the parties to submit briefing concerning whether Petitioner is a member of the class certified in *Vasquez Perdomo v. Mullin*, No. 2:25-cv-05605-MEMF-SP. (Dkt. No. 12.) The parties submitted supplemental briefing. (Dkt. No. 13 and Dkt. No. 14.) Respondents reassert that Petitioner has not shown that the Government lacked authority to detain him. (Dkt. No. 13.) Respondents argue that Petitioner's membership in the *Perdomo* class is immaterial and that the case does not provide Petitioner any relief. *Id.* at 4-5. Respondents further assert that Petitioner has an adequate remedy by seeking a bond hearing and his alleged unjustified detention does not require intervention by this Court. (Dkt. No. 13 at 5.) Respondents thus conclude that the Petition should be denied, and judgment should be entered for the Respondents. *Id.*

Petitioner states that immediate release is the only adequate remedy since Respondents fail to address Petitioner's constitutional violations for warrantless arrest. (Dkt. No. 10 at 4.) Petitioner further asserts that Respondents do not address the claim that they detained Petitioner under

8 U.S.C. § 1225(b)(2) and denied him the process § 1226(a) requires; asserting that neither the Amended Answer nor the supplemental brief mentions it. (Dkt. No. 14 at 2.) The Amended Answer concedes that ICE obtained the Form I-200 "[b]ased on those facts and the questioning of Petitioner during this encounter," and the form bears no time of issuance. (Dkt. No. 14 at 3.) Petitioner asserts that no officer assessed whether Petitioner was likely to escape, and the Form I-213 records no such assessment. *Id.* Petitioner further contends that because he is held under § 1225(b)(2) without an initial custody determination, no Form I-286, and no bond hearing, the only remedy is release. *Id.* The matter is fully briefed, and both parties have consented to proceed before the Magistrate Judge.

## III. DISCUSSION

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A petitioner held in custody in violation of the Constitution or federal law is entitled to habeas relief. *See* 28 U.S.C. § 2241(c)(3). Due process, which extends to noncitizens present in the United States, prohibits deprivations of life, liberty and property without due process of law. *See* U.S. Const. Amend. V; *Trump v. J.G.G.*, 604 U.S. 670, 673 (2025); *Zadvydas v. Davis*, 533 U.S. 678, 693-94 (2001). Due process requires that a person be afforded notice and an opportunity to be heard "at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976).

The Respondents concede that Petitioner is a 1226(a) detainee and appears to be entitled to an initial bond hearing pursuant to *Rodriguez Vazquez v. Bostock*, No. 25-6842 (9th Cir. July 30, 2026). (Dkt. No. 7.) Specifically, the Respondents state that a "§ 1226(a) detainee will be released on bond if he demonstrates by a preponderance of the evidence that he is not a flight risk or a danger to the community." *Id*. at *5 (citing *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1197 (9th Cir. 2022).

As a 1226(a) detainee, "[o]n a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a) (emphasis added). "A warrant of arrest shall be obtained except when the designated immigration officer has reason to believe that the person is likely to escape before a warrant can be obtained." *Id.*

Section 1226(a) "sets out the general rule" for "the arrest, detention, and release" of "aliens present in the country" "who are believed to be subject to removal." *Nielsen v. Preap*, 586 U.S. 392, 396 (2019). Under Section 1226(a) and its implementing regulations, a DHS officer may arrest and take into custody a noncitizen "under the authority of Form I–200, Warrant of Arrest" issued by certain designated supervisory officers. 8 C.F.R. § 236.1(b). The Government "may" detain such individuals "pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a). DHS officers also have the authority to conduct a warrantless arrest if there is probable cause to believe a person is subject to removal and "is likely to escape before a warrant can be obtained for his arrest." 8 U.S.C. §1357(a)(2). *See generally Tejeda-Mata v. INS*, 626 F.2d 721, 725 (9th Cir. 1980). Such individuals must be promptly brought before an examining officer to determine if the person is

subject to removal, 8 C.F.R. § 287.3(a), and referred for a custody determination within "48 hours of the arrest" absent an emergency or other extraordinary circumstances. 8 C.F.R. at § 287.3(d).

Regardless of whether the individual is arrested pursuant to a warrant or DHS's warrantless arrest authority, DHS officers are to conduct an initial custody determination to decide whether to release or detain the person under Section 1226. 8 C.F.R. § 236.1(c)(8). Unless the person is subject to mandatory detention under Section 1226(c) based on their criminal history, DHS has "the discretion either to detain the alien or to release him on bond or parole." *Nielsen*, 586 U.S. at 396. The DHS officer must release the noncitizen if the noncitizen "demonstrate[s] to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding." 8 C.F.R. § 236.1(c)(8). DHS utilizes a Notice of Initial Custody Determination, Form I-286, to document its custody determinations. 8 C.F.R. § 236.1(g).

The Form I-286 includes "the formal mechanism—a box the detainee may check—to immediately request" that an Immigration Judge ("IJ") review DHS's custody determination at a custody redetermination hearing (i.e., a bond hearing). *Garcia-Maya v. Blanche*, No. 2:26-cv-01513-RFB-BNW, 2026 WL 1965886, at *8 (D. Nev. July 7, 2026). If the noncitizen checks this box, or otherwise requests a custody redetermination hearing, an IJ will set a hearing in Immigration Court. *See* 8 C.F.R. §§ 1236.1(d)(1), 1003.19. "If at this hearing the detainee demonstrates by the preponderance of the evidence that he is not 'a threat to national security, a danger to the community at large, likely to abscond, or otherwise a poor bail risk,' the IJ will order his release." *Rodriguez Diaz v. Garland*, 53

F.4th 1189, 1197 (9th Cir.2022) (quoting *Matter of Guerra*, 24 I. & N. Dec. 37, 40 (B.I.A. 2006)). The noncitizen can "appeal an adverse decision to the BIA." *Id.* (citing 8 C.F.R. § 236.1(d)(3)). Alternatively, "an individual detained pursuant to § 1226(a) may request an additional bond hearing whenever he experiences a material change in circumstances." *Id.* (citing C.F.R. § 1003.19(e)). "The same procedures apply to this new hearing, and its outcome is also appealable to the BIA." *Id.* The noncitizen may also seek judicial review of the immigration courts' bond determination through a habeas petition challenging the determination as constitutionally deficient, legally erroneous, or an abuse of discretion. *See Martinez v. Clark*, 124 F.4th 775, 784 (9th Cir. 2024). Reviewing this statutory and regulatory framework, the Ninth Circuit has observed that "Section 1226(a) and its implementing regulations provide extensive procedural protections that are unavailable under other detention provisions, including several layers of review of the agency's initial custody determination, an initial bond hearing before a neutral decisionmaker, the opportunity to be represented by counsel and to present evidence, the right to appeal, and the right to seek a new hearing when circumstances materially change." *Rodriguez Diaz*, 53 F.4th at 1202.

### A. Due Process Requires a Determination that Detention is Warranted under Section 1226(a)

While Section 1226(a)'s "extensive procedural protections" arise from the statute and its regulations, they are also grounded in due process principles. The Supreme Court has recognized that due process requires that immigration detention bear a "'reasonable relation'" to a non-punitive purpose. *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) (quoting *Jackson v.Indiana*, 406 U.S. 715, 738 (1972)). There are two permissible non-

punitive purposes for detention under the immigration laws: ensuring a noncitizen's appearance at removal proceedings or removal and preventing danger to the community. *Id.* at 690-92. "In the context of immigration detention, it is well settled that due process requires adequate procedural protections to ensure that the government's asserted justification for physical confinement outweighs the individual's constitutionally protected interest in avoiding physical restraint." *Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017) (cleaned up). *See also Padilla v. United States Immigr. & Customs Enf't*, No.24-2801, 2026 WL 2822044, at *16 (9th Cir. Sept. 21, 2026) (recognizing that "the principle that the government cannot arbitrarily detain people, including noncitizens, has been a central tenet of British and American legal traditions since the thirteenth century" and discussing the history of protections against arbitrary detention applied to noncitizens). Section 1226(a), and its implementing regulations, establish procedures to ensure that the Government only detains noncitizens where it advances its legitimate interests in preventing danger and flight.

Unlike individuals subject to mandatory detention under Section 1226(c), Congress has not required the detention of individuals detained under Section 1226(a). *See Jennings v. Rodriguez*, 583 U.S. 281, 306 (2018). Instead, Section 1226(a) provides immigration authorities with the discretion to detain or release such individuals "pending a decision on whether" they are "to be removed from the United States." 8 U.S.C. § 1226(a). It follows that due process requires the Government to exercise this discretion and determine, on an individualized basis, whether to detain or release a noncitizen under the statute. Otherwise, a noncitizen subject to Section 1226(a) would be effectively subject to mandatory

detention, in direct contravention of Congress's determination that detention under Section 1226(a) is not required. There would also be an unacceptably high risk that that the noncitizen's confinement is not "reasonably related" to a legitimate purpose. *Zadvydas*, 533 U.S. at 690; *Pablo Sequen v. Albarran*, No. 25-cv-06487-PCP, 2025 WL 2935630, at *7 (N.D. Cal.Oct. 15, 2025) ("Noncitizens subject to § 1226(a) therefore have a statutory as well as constitutional interest in remaining out of custody unless they pose a threat to the public or a flight risk."). For these reasons, courts have found that noncitizens are "entitled to the procedural protections provided by §1226(a), not merely by statute and regulation, but also by the Due Process Clause." *Garcia-Maya*, 2026 WL 1965886, at *5; *Bautista v. Santacruz*, 813 F.Supp. 3d 1084, 1094 (C.D. Cal. 2025) (discussing "the due process protections found within § 1226(a)").

This case implicates the "several layers" of process that are required for DHS to arrest and initially detain a noncitizen under Section 1226(a). *Rodriguez Diaz*, 53 F.4th at 1202. As discussed above, the INA only authorizes immigration authorities to arrest an individual under Section 1226(a) with a warrant issued by certain designated supervisory officers or, in limited circumstances, without a warrant based on probable cause and a determination that the individual is likely to escape.

For individuals taken into custody, the regulations require that DHS must conduct a prompt custody review and, if it determines that detention is warranted, provide the individual with an opportunity to request IJ review at a bond hearing. These procedures serve several important due process purposes. The initial custody review ensures that DHS only detains a noncitizen where officers determine that detention is justified on an individualized basis and engages "in a deliberative process prior to, or

contemporaneous with, the initial decision to strip a person of the freedom that lies at the heart of the Due Process Clause." *Kelly v. Almodovar*, No. 25-cv-6448-AT, 2025 WL2381591, at *3 (S.D.N.Y. Aug. 15, 2025) (quotations omitted). It also requires DHS to provide written justification for a decision to detain and "create[s] a record that permits meaningful review of whether the required procedure occurred." *Dos Reis v. McShane*, No. 26-cv-3775, 2026 WL 1746649, at *5 (E.D.Pa. June 17, 2026) ("A contemporaneous, individualized custody determination require[s] ICE to explain why detention, rather than release on conditions, is necessary for *this* Petitioner.") (emphasis in original). The initial custody determination is also the "mechanism" by which noncitizens are advised that they can seek review before an IJ and provided an opportunity to request such review by checking a box on the Form I-286. *See Garcia-Maya*, 2026 WL 1965886, at *8. Absent an initial custody review, a noncitizen may not be aware that they are eligible for a bond hearing or know how to request one. *See Castellanos Franco v. Warden, Adelanto ICE Processing Ctr., et al.*, No. 5:26-cv-05549-MWC-DMK, 2026 WL 2922670, at *4–5 (C.D. Cal. Sept. 29, 2026) ("Respondents' 'failure to provide petitioner with any of § 1226(a)'s 'substantial procedural protections,' ... including the right to request an initial custody re-determination before an IJ under 8 C.F.R. § 1236.1(d), violated procedural due process.'") (quoting *Rivas Garcia v. Current or Acting Field Dir.*, No. 1:26-cv-03245-DAD-SCR, 2026 WL 1265937, at *4 (E.D. Cal. May 8, 2026)). And even when a noncitizen requests a bond hearing before an IJ, it may be weeks or months until the hearing is scheduled. *See generally Trujillo-Hernandez v. Mullin, et al.*, No. 5:26-cv-03282-SP, 2026 WL 2826326, at *5 (C.D. Cal. Sept. 21, 2026).

Without an initial custody determination, then, a person could be confined for a prolonged period without any determination that such a profound deprivation of their liberty is actually justified. In light of the critical importance of the procedures available under Section 1226(a) at the outset of an individual's detention, numerous courts have recognized that "section 1226(a) requires an individualized custody determination before detention and failure to do so is 'in itself [ ] a violation of [petitioner's] due process rights.'" *Lopez Esteban v. Warden-Facility Adm'r of Nw. Processing Ctr.*, No. 2:26-cv-02548-JHC, 2026 WL 2686824, at *4 (W.D.Wash. Sept. 14, 2026) (quoting *Pastrana-Beltran v. Mullin*, 2026 WL 1398609,at *2 (E.D.N.Y. May 19, 2026) and collecting cases). *See also Occeus v.Warden, California City Detention Facility*, No. 1:26-cv-07057-TLN-SCR, 2026 WL 2858725, at *1 (E.D. Cal. Sept. 23, 2026) ("Petitioner was denied statutory and regulatory protections under § 1226(a) and 8 C.F.R. § 1236.1(d) for a period of months in this case, which constitutes a separate procedural due process violation."); *Angulo-Barbosa v. Blanche, et al.*, No. 2:26-cv-02102-RFBBNW, 2026 WL 2676815, at *2 (D. Nev. Sept. 11, 2026) ("the Court finds Petitioner's detention without notice of an initial custody determination violates Petitioner's right to substantive and procedural due process"); *Rodriguez v. Knight, et al.*, No. 1:26-cv-00505-BLW, 2026 WL 2641448, at *3 (D. Idaho Sept. 8, 2026) ("the Government violated his due process rights by denying him the individualized custody determination required under § 1226(a)"); *Zurita Navarro v. Warden, Cent. Valley Annex Det. Facility*, No. 1:26-cv-05661-DAD-SCR, 2026 WL 2294963, at *2 (E.D. Cal. Aug. 10, 2026); *J.T.G. v. Genalo*, No. 26-cv-4521-AT, 2026 WL 1724325, at *4 (S.D.N.Y. June 15, 2026); *Curimilma Quille*

*v. Blanche*, No. 26-cv-2818-HG, 2026 WL1453889, at *4 (E.D.N.Y. May 22, 2026).

### B. Petitioner's Detention Was Unlawful Warranting Release

Petitioner claims that Respondents violated 8 U.S.C. § 1226(a) and its implementing regulations by not assessing Petitioner's risk of escape prior to his arrest and by not providing him with an immediate custody determination hearing following his arrest. (Dkt. No. 1.)

Respondents assert that Petitioner's detention was proper pursuant to an administrative warrant and that the burden is on the Petitioner to request a bond hearing. (Dkt. No. 7, 8 & 13.) Respondents submitted evidence that an I-200 warrant was obtained the same day Petitioner was detained on June 28, 2026. (Dkt. No. 7 & 8.)

However, Respondents do not address whether ICE conducted an initial custody review. Respondents did not submit a Form I-286 for Petitioner and nothing in Respondents' submitted evidence suggests that an initial custody review was completed.

Respondents argue that the burden is on the Petitioner to request a bond hearing. (Dkt. Nos. 7,8, & 13.) However, without the Form I-286, and absent an initial custody review, the noncitizen may not be aware of his eligibility to a bond hearing or know to request one. *See Castellanos Franco v. Warden, Adelanto ICE Processing Ctr., et al.*, No. 5:26-cv-05549-MWC-DMK, 2026 WL 2922670, at *4–5 (C.D. Cal. Sept. 29, 2026).

Petitioner was not afforded the due process he was owed as a 1226(a) detainee. Individuals held in custody must be promptly brought before an examining officer to determine if the person is subject to removal, 8 C.F.R. § 287.3(a), and referred for a custody determination within "48 hours of

the arrest" absent an emergency or other extraordinary circumstances. 8 C.F.R. at § 287.3(d). The noncitizen has the opportunity to "demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the [noncitizen] is likely to appear for any future proceeding," *see* 8 C.F.R. § 1236.1(c)(8).

This is particularly important in this case given that the Respondents' own documents show that they were seeking a Guatemalan national with a criminal record and a final order of removal, but the two individuals arrested were Mexican nationals. The warrant was only obtained after the arrest.

Respondents rely upon Petitioner signing a voluntary departure document on the day of his arrest. (Dkt. No. 8.) However, Petitioner presents facts around the circumstances of the arrest in which Petitioner asserts he was beaten, and his ribs broken during his arrest. (Dkt. No. 1.) Respondents do not address the circumstances of the arrest, but Respondents' own documents show that Petitioner was not the target of Respondents' operation since they were looking for a Guatemalan man but detained two Mexican nationals. Petitioner was also merely a passenger in the vehicle. Whether Petitioner's consent is knowing and voluntary is further called into question because a custody determination was not conducted and Petitioner was not provided the I-286 form.

Based upon the record and arguments, the Court therefore concludes that Respondents failed to provide Petitioner with an initial custody review at the outset of his detention. The Court agrees with Petitioner that his arrest and detention violated 8 U.S.C. § 1226(a) and due process for the reasons discussed *supra*.

The Court must determine, then, the proper remedy for the violation of Petitioner's rights. Respondents argue that, "to the extent Petitioner would be entitled to any remedy via the Petition, at most it would be ordering a bond hearing to be held before an Immigration Judge under §1226(a)." (Dkt. 7, 8, & 13.) However, as most courts to address this issue have concluded, the "failure to comply with the procedures set forth by 8 U.S.C. § 1226(a) and its implementing regulations during a petitioner's initial detention renders that detention unlawful and that unlawfulness cannot be cured through belated compliance with statutory requirements." *Zurita Navarro*, 2026 WL 2294963, at *2 (E.D. Cal. Aug. 10, 2026); *J.T.G.*, 2026 WL 1724325, at *4 ("Because J.T.G.'s detention was unlawful from the outset, the government cannot cure its procedural failures by providing a custody determination three weeks later."). *See also Lopez Esteban*, 2026 WL 2686824, at *4 (collecting cases). "The suggestion that government agents may sweep up any person they wish without consideration of dangerousness or flight risk, so long as the person will, at some unknown future date, be allowed to ask some other official for his or her release, offends the ordered system of liberty that is the pillar of the Fifth Amendment." *Gonzalez v. Joyce*, No. 25-cv-8250-AT, 2025 WL 2961626, at *5 (S.D.N.Y. Oct. 19, 2025).

Petitioner has now been confined since June 28, 2026, without any determination that this lengthy detention is warranted. A bond hearing belatedly conducted at some point in the future is "no substitute" for an initial custody determination that would have established "a lawful basis for detention in the first instance." *Garcia-Maya*, 2026 WL 1965886, at *8 (quoting *Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 497 (S.D.N.Y. 2025)). Because Petitioner's detention has been unlawful from the outset,

the Court concludes that the "most appropriate remedy for this violation would be to return Petitioner to the previous status quo by releasing him from detention." *Reyes v. Santacruz, Jr., et al.*, No. 26-cv-3394-E, 2026 WL 2069974, at *2 (C.D. Cal. July 13, 2026). The Ninth Circuit has recognized that "the purpose of habeas remedies is to put the defendant back in the position he would have been in if the constitutional violation never occurred." *Lujan v.Garcia*, 734 F.3d 917, 935 (9th Cir. 2013) (cleaned up). *See also United States v. Stein*, 541 F.3d 130, 146 (2d Cir. 2008) (recognizing that the "[t]he appropriate remedy for a constitutional violation is one that as much as possible restores" a litigant "to the circumstances that would have existed had there been no constitutional error") (cleaned up). This principle has particular force where, as here, the protections at issue are intended to prevent an unlawful detention in the first place. *See United States v. Morrison*, 449 U.S. 361, 364 (1981) (observing "the general rule that remedies should be tailored to the injury suffered"). Finally, the Court observes that Respondents do not argue that Petitioner is in fact a danger or flight risk, or that there is any other basis for his continued detention. Nor does the record reveal any justification for Petitioner's detention.

There is nothing in the record before this Court to suggest that Petitioner, who has lived productively in the United States since 2009, with a longtime job as a landscaper, and is married with children, with no criminal history, poses any danger or risk to the safety of the community. Respondents' own evidence fail to support anything to the contrary. (Dkt. No. 1, 7, & 8.)

## IV. CONCLUSION

For the foregoing reasons, the Court concludes that Petitioner is entitled to habeas relief. IT IS ORDERED that: (1) Judgment be entered granting the Petition; (2) a writ of habeas corpus be issued requiring Petitioner Isaac Arana-Sanchez's (A#246-061-854) immediate release and restoration of liberty to the conditions existing prior to his detention on June 28, 2026, along with his personal belongings, including his identification, passport, work permits, and other documentation, and preventing his re-detention absent pre-deprivation notice and a constitutionally adequate pre-deprivation hearing at which the Government must justify the need to confine him prior to his re-detention; and (3) the parties shall file a joint status report no later than seven (7) days from the date of this Order confirming that Petitioner has been released from Respondents' custody. Additionally, the Petitioner and the Court shall be provided with at least three (3) days notice prior to Petitioner being removed from this jurisdiction.

IT IS SO ORDERED.

DATED: November 20, 2026

ANNA Y. PARK
UNITED STATES MAGISTRATE JUDGE